People of the State of Illinois, happily, by Stephanie Ragan, versus Christine R. Callum, by Matt Davidson. Good afternoon. May it please the Court, I'm Matt Davidson. I'm an attorney with Legal Advocacy Service. I'm appointed counsel here on behalf of Christine R. in this appeal. The Public Defender's Office of Peoria County was Christine's trial counsel in this matter. And we're here on appeal of one particular case number, but I should clarify, it's actually of two separate hearings. The petition and hearing on the involuntary commitment of Christine, and the petition and hearing on the involuntary treatment of her. Christine had arrived at Unity Point, Proctor on Thursday. The paperwork for these matters was filed the very next day on Friday around 4.30 in the afternoon. On Monday, the search report entered into order saying both matters for hearing the following day, Tuesday, are at 1.15 in the afternoon, as well as appointing counsel. On Tuesday, both hearings proceeded, and shortly thereafter, a little before 4 p.m., Christine's handwritten notice of appeal was submitted. So we're talking about a timeline of a little less than a week for these events to unfold. I wanted to address each of these hearings sequentially, that is, the involuntary commitment proceeding and its possible issues on appeal, as well as the involuntary treatment proceeding and its issues as well. But I wanted to point out to this Court that both of these cases carry a common theme to them, and that is, in these proceedings where a circuit court is being asked to enter an order that serves as a massive curtailment of someone's liberty interest, what circumstances, if any, is it appropriate for that person's absence to be excused or otherwise allowed? Up to the commitment case on that note, a central issue is what appropriate safeguards should be formally implemented before someone is removed from that fundamental proceeding. Similarly, in the treatment case, the core issue is under what circumstances, if any, can someone's attendance at that fundamental hearing be otherwise excused or waived by their own attorney? Turning first to the commitment case, we do not contest or dispute that the respondent was interrupting and disruptive during the proceedings. But what we do argue when we ask for reversal on this Court's input on it is the lack of safeguards and admonishments, for lack thereof, prior to the removal of Christine in that proceeding. There was some talk during these interruptions that maybe there would be a possible recess or a break taken, and then the Court abruptly pivots and has Christine removed from the proceeding without warning her. This conduct is so disruptive, you will be removed if this continues. That never occurred in the rest of them. Instead, she was removed from that proceeding. She wasn't there to aid her attorney in any clarifying information or mitigating facts that came up on that attorney's cross with the doctor. She was not invited in or there to present her own testimony and her own defense. And she certainly wasn't there during closing arguments when her own attorney waived closing and instead said, I believe my client's behavior and statements when she was in here somewhat gave her a closing statement. Given all this, we're here today to ask the Court to formally and explicitly adopt the seminal safeguards set forth in the Illinois v. Allen case. These are safeguards that some circuit courts in our state are actually already doing organically, but we would like a formal adoption of it. And that is a warning to the respondent about the conduct that's disruptive, that if the conduct continues, they will be removed from the proceeding with an opportunity to return. Are you advocating for specific admonitions or, you know, some specific wording or what is it that you think satisfies her right of notice? Yes, Your Honor. What we would want is a specific admonishment that here's the conduct that's problematic. It needs to cease. If it does not cease, you will be removed from these proceedings and we won't stop going. We will continue the proceedings with evidence without you present. And you will have the opportunity, just like Illinois v. Allen, to reclaim your presence here, but this is going to continue without you present if this conduct continues. We see some of this percolating already in some of the circuit courts. As we mentioned, the Darrell C. case, in that case, the respondent voluntarily took himself out of the proceeding. And the circuit court was comfortable proceeding with evidence and testimony in that case because it was clearly demonstrated. The respondent knew if I leave this matter, it's going to continue without me and evidence is going to be put on him. And that respondent also knew he could return to the hearing at any time. But don't you think, I mean, going back to, you know, safeguards and procedures and admonitions, when the trial court first said, you know, the court's going to direct this particular process to stop. We're going to take a recess. Then you and Christine are going to have the opportunity to go in the hallway and take a break. We're going to give you a break then. You're going to come back. If you elect to come back in, you're going to have to be quiet throughout the testimony of the doctor. It makes it very difficult. She's interrupted. But then she talks about, you know, you keep raising your voice. You keep interrupting. I need to be able to hear. You're utilizing your finger. Don't you, I mean, is that, why is that insufficient? What's problematic with that, Your Honor, is during that subjective experience, the respondent's hearing, this conduct is inappropriate. It's interfering with things. And the penalty she's hearing from that court is we might take a break, we might take a recess. At no time is she told, this is going to continue in your absence once you're removed and you have an opportunity to return. So in the client's shoes at that moment, the worst case scenario during this is everything's going to come to a grinding halt. She's never warned. We're going to have testimony without you in there. You're not going to have an opportunity to hear it. You're not going to be back here for your own direct examination. Also in the Benny M case we cited, now this isn't a specific issue on that appeal, but it is mentioned that that circuit court in that matter knew enough to warn that respondent, your conduct is problematic and you will be removed if it does not stop. So there's already this organic following of it in some places. We would ask for this court to adopt those safeguards. It would be a combination of both common sense and that relevant case law. It would restore not only some much-needed formality, it would help mitigate some of the confusion and chaos that may accompany when a respondent is removed during the proceeding. For instance, for the court's benefit, for the counsel's benefit, it would be nice to have some bright-line rule of when things escalate to this point beyond a recess, beyond a timeout where you can regroup, and it's escalating to the point of removal, the judge knows these are the admonishments to be made, if the person has afforded that. These are not casual hearings. These are involving significant liberty of interest, and to ask that, I think, is not too much. To pivot then, the issues here compound only further when we pivot to the medication proceeding and the beginning of that. At that moment, the court notes Christine's absence and asks counsel to comment on it. The state's attorney mentions it wants the court to take judicial notice of the prior proceeding, and the public defender then says, I would ask my client's presence to be waived given the last hearing. There's a couple issues with that waiver right off the bat. One right away is we know from the commitment proceeding, Christine is contesting this public defender's role, and she has an issue with attorney's representation. We know that Christine wants to testify. She indicates she wants to give the facts to the court, and we know the attorney never calls between proceedings to file any kind of motion to withdraw or continue the case to kind of resolve this. So this attorney is now standing in court without Christine saying, I'm going to waive this person's interest in being present at such a fundamental hearing. And we know Christine was interested in this. She filed a handwritten notice of appeal shortly after the hearing upon receiving these, and she had a vested interest in being there. It's undisputed that we all have a significant due process liberty interest in being free from unwanted medication, and given that, we have a right to be present at any hearing that seeks to interfere with that right. Respondents, not their attorneys, should have the right to waive such constitutional rights. The problem here with 806 provision in the code is it allows the attorney to otherwise exclude someone that wants to be in court. And this is a court proceeding involving the forced medication upon this person or the administration of electroconvulsive therapy upon this individual. And to sanction or otherwise endorse 806 and allow attorneys to make these waivers, we contend is in violation of the person's due process. Why do you use the word sanctions or don't, or how do you phrase it, sanctions? If we allow 806 to remain as it is and the court were to endorse it and sanction it, I mean in a positive way and say there's no problem with this. We're going to have situations like the one we have here where a respondent wanted to be present, and just like in the Barbara H. Pellett decision we cited where the respondent wanted to be present, an attorney is otherwise in court saying, I waived their presence, they don't need to be here. And we'll continue to leave 806 untouched. It's going to encompass situations where people want to be in court at these psychotropic medication hearings and they're otherwise waived by the attorneys. 806 is a statute. It is. Do you want us to overturn the statute? We're asking you to find 806A unconstitutional, Judge. A certain district did it in Barbara H. and went out to the State Supreme Court. The State Supreme Court says we don't have to get to that yet because in Barbara H. it was unclear whether the respondent had a public defender or another attorney. I mean, I got the impression you wanted us to follow the Second District's rationale, even though it wasn't affirmed by the Supreme Court. That's correct. And I think that's indicative. I think the Second District had it right because here we are again and these situations keep coming up. And I understand why the State Supreme Court sidestepped the constitutional implications and got off out of it because of the hiccup with the attorneys. And quite frankly, we fall squarely within the State Supreme Court decision, too, because I would contend when Christine R. is having an issue with her public defender, that's a clear dispute in the attorney's authority, just like in Barbara H. where it was unclear whether that attorney had the authority to waive the client's absence. I mean, the reason I'm asking the question, obviously, is because our Supreme Court has told us, the appellate courts and the courts, not to entertain constitutional arguments if there are other issues that can resolve the matter. I understand that. And there are other issues here that could resolve the matter. Your Honor, I would implore you to constitutional avoidance in the doctrine of it is not, it's a rule of canon and construction of doctrine. But it's a large Supreme Court. It does not have to be faithfully. What I would ask is that courts also recognize that for the population that's the most vulnerable among us, we sometimes can bypass doctrines like that because this will keep happening to them. And I respect the idea that there's some other way we can get out of this thing. But if you see this hurting a minority of people, I think the case law is also clear that courts have an obligation. And if it's a bad law, it's a bad law. And we shouldn't avoid it when it's faced. Or it comes up to the courts again and again and again. And there's different ways we can try to sidestep it, like the Barbara H. case, but I think we'll just be in this situation. My fear is that while our agency may not see waivers occur because we don't do that to clients that want to be in court, but for all the counties that don't have us in the circuit courts, I think we should all be greatly concerned about how many attorneys out there are doing this to clients that are problematic and difficult, and it would be easier if they didn't come to court. I think this is an urgent issue that should be addressed. And I appreciate the hesitancy under the doctrine, but I think if we take it upon ourselves as a rule, this is an important issue too. It's not a hesitancy. It's a directive. It's a directive from the Supreme Court. Let me ask you this. What do you see as the significant differences between this case and Barbara H.? Barbara H., the state Supreme Court decision? Yeah. Judge, so we'll be ignoring the constitutional implications. We don't find we would still get reversal. I would contend under Barbara H. Now, Barbara H., attorney goes to court, public defender, and says, Your Honor, she's telling me there's another attorney from Catholic Charities. I think judge keeps pushing the attorney until finally the attorney waves and the hearing goes on. The state Supreme Court says, It's not even clear who this person's attorney was, so we're not going to endorse a waiver by that attorney. I would suggest that we still fall squarely within that decision because right off the bat at the commitment proceeding, you see a respondent saying, I don't want this attorney. I dispute this person's role, and I want to have an active voice or have a role in this proceeding. So I think given the rationale of Barbara H., we still fall within that, and it should be reversed on those grounds as well. We don't touch on my wish list here of constitutional arguments, but it's still a valid reason to send it back and say, It's clear this respondent had an issue with this attorney, and minutes later you get that same attorney without the respondent in court saying, I'll just waive her presence and get the order that's entered against her. Counsel has two minutes. As noted in that state Supreme Court opinion in Barbara H., one of the most powerful language from that is the court suggested the respondent's rights in that case were effectively surrendered by a stranger, and I think that's exactly what happened here given the timeline and given the turnaround time, the other public defender showing up to court, a respondent saying the words, She doesn't know what's going on, and effectively Christine's rights were surrendered by a stranger here just like in the state Supreme Court. She's in that opinion. That kind of moves into a brief highlight of our topic also. I've talked about the right to be present and the absence and the excuse. Underneath all of that is our claim on appeal about ineffective assistance of counsel. We look at several features here. There's a large mosaic or totality such as the failure to object to her removal, failure to try to bring her back into the hearing. The waiver altogether was ineffective because it infringed on fundamental rights, such as the right to testify. The attorney didn't take issue with the medication petition that was, quite frankly, print off the statute and sign it and call it a pleading. There's no facts or facts alleged in that petition. There's all sorts of other issues there that would warrant reversal due to ineffective counsel, but we're here to invite the court to comment on these issues of when people are getting either removed or excused and need some credence to a little more formalities and proceedings. Given the disparity, I think there's a disparity between the intense relief being sought here. This is the apex of state intrusion upon someone, forcing electroconvulsive therapy or medication into someone. And to adopt and endorse these safeguards, I think, are not a bridge too far. I deserve the balance of my time. Ms. Raymond? Thank you, Mr. Court. Madam Counsel, I'm Inspector Raymond. I'll be representing the state bill on this matter. The initial position of the state is that this issue or this case is moot, as the orders were all effective for 90 days and were issued May 1, 2018, a time being expired, and our position is that it is moot. Should this court find that it is not moot, I will address counsel's arguments in turn. Regarding the involuntary commitment hearing, if the facts in that case, I think it's important to note what was actually said, which has been reviewed a little bit, which is that the trial court gave her, you know, throughout the proceedings, warned her several times about her behavior, gave her opportunities to sort of correct her behavior or not interrupt while speaking, and she chose not to and continued in this disruptive behavior. The trial court said, you know, take your break. If you would like to come back, then you'll have to be quiet. She did not come back. There are no facts in the record saying that she was persisting in the fact that she wanted to come back and was not allowed. Any conversations between her and her attorney were not, of course, on the record, so there could have been a discussion between the two that neither party is aware of. Did they go off the record after the commitment hearing and come back on? Yes, they actually do take a break. Break in between the commitment and the medication hearing? Yes, they do. So then they come back on the record for the medication hearing. At that point, the state does ask that the court take judicial notice of the hearing, and the counsel does waive her presence, which under 3806 is proper because she should be present unless her attorney waives her presence. But I think the second part that's important in that statute is that the court finds, by a clear showing, that his or her continued presence would create a substantial risk to her physical or emotional health. And in this case, we have that. The trial judge goes specifically on the record and says this is a safety issue. She continues to be disruptive despite the fact that there are guards here. She's aggressive in her mannerisms, in her speech. And the trial judge found that it was a risk to her to be there, to her emotional or physical health for her to remain in the hearing. So I think that that's an important part of that statute. And the issue with the attorney regarding whether or not she wanted to, the issue was that she wanted to represent herself, and the trial court actually conducted some questions, asked her about her education, what was her background, to determine whether or not she was able to represent herself and determine that she was not able to represent herself. So there is no issue in this case, as there was in Barbara H., about an attorney and whether or not that attorney had authority to represent her. The fact that she didn't want that attorney to represent her does not mean that that attorney didn't have authority where the trial court did conduct a small portion to figure out whether or not she was able to represent herself. So in this case, the attorney did have authority. She noted on the record that she had reviewed Ms. Farman's file and was therefore properly appointed under 305. I'll talk a little bit about the medication hearing. When the state puts on this case and they're talking about the different medications and tests, is there a problem, as you said, with the lack of specifying dosages, actual drugs, actual tests, or any of those things for her, what the plan is going to be? Is there a problem? To say we're going to run some tests usually doesn't cut it. Here, why should we find that this is sufficient? Because she did actually name the specific tests, the EKG and different things. The only thing that she said at the end was any that may be required, meaning that if there are some other tests that pops up, some other problem that presents itself, and there's a test that sort of will remedy or get more into that problem or figure out, then that would be something that she would request. So it's the people's position that her testimony was sufficient in naming those. Are there no further questions? No? Thank you. District Davidson. Thank you. Just to briefly work backwards, there is an issue with the idea of just putting down any other last clinically indicated. This very district in Sharon H. indicated that's not how we do it. Otherwise, you're delegating factual findings to a doctor at a later date rather than the court. Sharon H. quoted Donald L. with the same findings, that without specific evidence, the court is unable to determine which tests are essential to the state and effective administration of treatment as required by the code. And the court may not delegate that determination to the person's doctor by allowing them to administer unspecified tests at the doctor at a later stage. To address mootness, as this court knows, almost all of our mental health proceedings are moved by the time we get to just given the nature of the cases. What we come to the court with today in our briefs are issues that fall squarely within the public interest exception, and the court's aware of those problems required when we set those forth in our brief. As to counsel's comments about 806 and whether there was a clear showing, and maybe there's some things off the record, that's the problem, is that the court needs to be comfortable that a respondent's not present at such a fundamental hearing and it's being done correctly rather than not by someone outside of their presence. And I would contest the idea that there was a clear showing of substantial risk. That would require us to transpose conduct and actions at another separate proceeding and allow it to be brought into the medication proceeding. We don't know how much time will last. We don't know Christine's current state of mind at that moment and how things are going. It's the same day. Same day, same afternoon. But to put it another way, Justice Carter, our client has the right to come in and get kicked out of the medication proceeding if she's still engaging in that conduct. But she was engaging in conduct earlier. Earlier on in the other proceeding, right? They have a government. If you're okay, you can come back in. There were some warnings initially that we might take a recess and a break and you can kind of get it and then that'll probably fit it too. She's gone. She's out of here. And no point for the judge to say, do this again. We're not going to take a break. You're going to be out of here and we're going to hear from the doctor. I'm going to make findings without you present and you'll not have the chance to get back in. But she was in custody. She was committed at the time of the hearing, right? I mean, how would she have been able to just come back in? Thank you for the question. One of the benefits of her in this courtroom here is people can come and go as they please at all times, it seems. These are hearings being held on locked units or adjacent to locked units at a facility. Anecdotally, I can tell you people cannot come in and out of these rooms at their leisure. I've never seen that where people can kind of stroll in and out. It's a little corner of the legal world. And we wish there would be more attention brought to it because it's not as simple as her strolling back in and saying, I'm ready to proceed now. With respect to the second hearing, do we know whether, before her attorney waived her presence, whether he discussed it with her and she agreed? No, we don't, Judge. And I think that's the fundamental disconnect here, the problem with 806. It's allowing an agent of a person to come in. And we have to suspect or speculate that the attorney has the authority to do this. And I think the case law, even though Barbara H. and the appellate court got set up and modified, they're pulling fundamental Supreme Court case law out. When we involve constitutional rights, those rights belong to the client, not the attorney, to surrender. And instead, you have an attorney at the second hearing going in and surrendering them without the court perking up and saying, wait, this woman clearly wanted to be here. I need to do a little more backfinding here. I need to be comfortable with this on the record that this is going to happen. 806 has never been found to be unconstitutional. 806 has by Barbara H. Oh, I mean, okay. Yeah. Yeah, 806 was struck down by the courts, right? There are no other questions. I believe it's stated in our brief in open court statement as to the reverse of those values. Thank you. All right. Thank you. Thank you both for your arguments here this afternoon. We'll take this matter under advisement. A written disposition will be issued. And right now, we'll be in a brief recess for a panel change for the next case.